May it please the court, Matthew Zorn for petitioners. I'd like to reserve five minutes of my time for rebuttal. The correct result in this case is to hold DEA's denial of the rescheduling petition at issue to be unlawful, to set it aside, and to direct DEA to send the petition to FDA to get its recommendations as the statute prescribes. I structured my question, why do we win? And two, why does the agency lose? As to why do we win, I structured that in the form of a law school exam answer. What is the issue? What is the rule? What is the application of the rule? What is the conclusion? The issue here comes from our rescheduling petition. We contend that psilocybin should be rescheduled to schedule two because it has a currently accepted medical use with severe restrictions. Why? Because it is an advanced stage developmental drug for which clinical evidence shows it can be safe and efficacious. This is all in our petition. Where does that rule come from? That rule comes from the FDA itself. It comes from a 1982 discussion involving THC and facts strikingly similar to the case that we presented in the petition. It also comes from a 2000 rule regarding GHB, in which the FDA similarly said that drugs in an advanced stage of development can have a currently accepted medical use with severe restrictions. We didn't stop there. We also showed how Congress itself and the FDA and a number of other actions has explained that it is accepted medical practice to administer developmental drugs with patients with terminal illness. And that makes sense because what the FDA is doing is regulating drugs for interstate marketing. What we're talking about is the administration of medicines shown to have great promise with terminally ill patients. And we didn't stop there either. We looked at the statutory structure and we explained currently accepted medical use with severe restrictions has to mean something. And it has to mean something different from currently accepted medical use and treatment in the United States. That's because there's a disjunctive or separates the two in the schedule two statute. Is it your position that just the phrase currently acceptable medical use should mean something different in those two parts of the statute? Or do you agree that whatever it means, it's constant? I think that it could be constant, but of course the agency until this case has never explained that. So there in any event, of course, our sort of secondary argument is that the way the agency is viewing accepted medical use is unlawful. Let's just focus on, I mean, there's currently accepted medical use in treatment in the United States. That's part of it. Currently accepted medical use with severe restrictions. So I understand your argument to be this falls within the latter. Psilocybin, currently acceptable medical use with severe restrictions. Correct. Okay. So on the phrase currently acceptable medical use in both parts of this statute, do you agree that it means this or are you arguing it doesn't mean the same thing when used twice? It doesn't mean the same thing in part because currently accepted medical use in the former is qualified by in treatment in the United States. And the agency's five part test is calibrated to that language. And we see this in the past agency action. We see this in the 1989 rule. We see this in the 1992 rule. It's the five part test that the agency has developed is not currently accepted medical use. It's in treatment in the United States. So my answer is perhaps the two things can mean the same thing, but if they do mean the same thing, then the agency's action is still unlawful because it shows why the five part test is wrong. Right? Well, the two phrases as a whole don't mean the same thing. That's obvious. The, but the phrases within them contain four common words, right? Currently accepted medical use. And I'm just trying to figure out if you have an objection to those to that part of the phrase being, being identified, being defined identically. I do not. I do have objection to treating them identically with the five part tests. And my point, and I think what the petition says is we don't need to speculate what accepted medical use with severe restrictions is because the agency in charge of making medical and Everyone has told us one answer and a law enforcement agency has come in and said something else. And we know that that's wrong under Gonzalez versus Oregon. The Supreme Court's already answered this question. And I think there's something really important that I want the court to know about the petition we submitted because it doesn't come through in the briefing quite clearly. There's a notion, I think in the briefing that we didn't apply this rule by submitting evidence, whether according to the five part test or not, that is absolutely not true. In the front page of the petition, when we show exhibit B, we attach a paper called the Johnson paper, the Johnson paper, and this is in the record. If we turn to page exhibit extra to record 27, the Johnson paper is entitled the abuse potential of medical psilocybin, according to the eight factors of the controlled substances This is a paper has 10 pages worth of citations, cites clinical research of all varieties, including evidence that would meet the five part test in spades. This wasn't incorporated by reference into the petition. I submitted, I mailed the petition to DEA. Your position is you didn't have to file a letter that went through each factor in the way that the government seems to have wanted you to do. That is our position that we don't. There's never been any rulemaking suggesting that a petition has to do that. So there would be a 552A violation, which is there's a procedure that they've never informed anyone of. And frankly, that's not even what FDA does. This paper is exactly what FDA does. It's according to the eight factors of the statute. And we sent them this paper. Let's talk about FDA. So you filed this, your position here is they should have referred this to FDA? Correct. That is from the normal two cases. That's the remedy. But where are you getting that in the statute? So the normal two case carefully analyzed the statute, and that was the remedy prescribed for a shockingly similar treatment of a petition. And where we get that in the statute, your honor, is there's just nothing else to do here. If the agency itself in its brief concedes at the very end of its brief, if the 43, that if there's a reasonable basis for rescheduling, it would then be in a petition to refer to HHS. We provided a reasonable basis for rescheduling. We submitted the Johnson paper, which passes under the five part test or not. We showed that there's no factual dispute that this is a late stage developmental drug. There's no factual dispute that this has a low potential for abuse. What else is there for DEA to do here? What is the standard that governs when if somebody files a petition for DEA, DEA is trying to decide whether to initiate proceedings. What is the standard that governs whether when they have to refer that to FDA? Well, under the regulations, I think it's sufficient ground is under their own regulations is what what the DEA regulation says. And I think that's the proper standard to use here. So what if they decide there's not sufficient grounds? Then we're here in court on a petition for review, arguing over whether or not it's a decision is supported by substantial evidence. And, you know, the fact, for example, that they simply did not consider the Johnson paper under state form makes this an easy an easy case that the agency has not considered the evidence that was put before them. And there's a myriad of other problems that we have flagged in the briefs, including that the five part test is itself unlawful. But this is an easy case. They didn't even consider the petition that we put before them. It's not even clear in the response whether the Johnson paper isn't even discussed, but that was sent to them. And it meets all of the evidence under the five part test, which, you know, here today, I'm not suggesting it's a satisfactory resolution of this case to say you didn't consider the evidence. Go apply the five part test. We'll just be back here in a year arguing over whether the five part test is lawful, which it is not. It is not. It violates the canons of statutory construction because it reads safety into two parts and joining parts of the statute. We have traced the lineage of this five part test is, for lack of a better term, a poster child for why Chevron deference shouldn't exist. But in any event, in the 1992 rule, when the five part test is established, the agency itself stated that this is contrary to the text, but it's just not a correct view of scientific reality. And so the five part test should be set aside. If the court is going to send this case back to D.A. as opposed to directing it to F.B.A. And again, we believe that that is the only correct result in this case, given that one F.B.A.'s scientific and medical recommendations are binding and two, it's on record multiple times as stating that a drug that meets the exact profile of psilocybin has a currently accepted medical use with In terms of why you think this should have gone to F.B.A., you're not arguing that anytime somebody files a petition with the D.A., they have to automatically refer it to the F.B.A. I thought your position was you just created a sufficient basis for that and their decision not to do so is arbitrary. That's correct. Not every petition that, you know, if it were a two page petition that cited no evidence whatsoever and it weren't an advanced stage drug that, frankly, you know, you can see that we have plenty of amici who can attest to this use in medicine. So just on the facts of this case, this petition had to be referred to F.B.A. And I might add, as far as the remedy is concerned, that's... Or it had to be better explained as to why it wasn't doing that, I take it. Certainly that, as an agency under the A.P.A., that was an absolute obligation. But, you know, Your Honor, the agency... This is not a case where this gets sent back to the agency and they come up with a better explanation as to why this was denied. We know what the agency is going to say. I mean, the agency is one of the best law firms in the country representing it here today. And we wrote 40 pages trying to defend what it's doing. And nothing in here, in the respondent's brief, that's correct or that could possibly justify not sending this to F.B.A. So there's no reason to depart from normal two. This is normal two all over again. This case is exactly like normal two and that's an out-of-circuit case. But that's all the government has to say for that case is that it's out-of-circuit. Not that the case isn't persuasive, but that it's out-of-circuit and misconstrues the statute. There's no argument as to exactly why the normal two court got that wrong. And what happened in normal two was there was actually a normal three. In other words, this dispute drags on until D.E.A. directs it, sends the petition to D.E.A. And Your Honor, I want to emphasize about this remedy. It comes back to D.E.A. This is not divesting them of any discretion whatsoever. It's making this statutory scheme tick. When Congress created the Controlled Substances Act, it wanted the Health and Human Services to make medical and scientific findings. If this court doesn't direct D.E.A. to send this petition, D.E.A. will have effectively rewritten this statute so that it can front-run petitions, meritorious petitions like the one that we submitted, make up the law and deny them without ever getting HHS's opinion on this. If D.E.A. wants to deny this petition in the end on some basis, it can do so. It's going to get the petition back from HHS. It's going to be a medical and scientific finding. The only reason that the agency doesn't want to refer this petition to HHS is precisely because of the reasons we put in the petition. It's entirely possible that HHS thinks that doctors should be able to use this medicine under severe restrictions. This isn't about diversion of any kind. Nobody's asking psilocybin to be approved. They do say they would accept a voluntary remand. They haven't moved for a voluntary remand. I have a lot to say about the voluntary remand. I think it's to some extent, Your Honor, like administrative reconsideration. There's actually no jurisprudential foundation for this. It starts from a 1941 Third Circuit case. There's nothing in the APA. But I think the shortest path through that is Judge Kavanaugh's opinion in the Limnia case, which says that unless the agency has said it's going to reconsider the decision under review, then there's no basis for a remand. The agency here hasn't said that they're going to reconsider this decision. They said, well, we would accept a voluntary remand if petitioners submitted additional evidence, which would be a different petition, could be a different agency action. And again, Your Honor, they didn't even look at the evidence we submitted with the first petition. I don't see why you'd object to having the opportunity to present more evidence. There's no more evidence to provide. The Johnson paper is one of the leading papers in the field. It has 10 pages of citations. It cites almost five clinical studies. If this evidence isn't sufficient, there's no quantum of evidence that would be sufficient. And again, Your Honor, this will be my final remark before passing the baton, but Your Honor, this statute tells them to look if they're interested in more evidence. It's not us. It's FDA. This is what Congress wanted. Congress did not want a voluntary remand so that DEA could get more evidence. The statute is absolutely clear. And so I would invite the court to give DEA exactly, substantively what it's asking for. If it wants more clinical evidence, if what we submitted isn't enough, then it should be asking FDA. There's no genuine dispute in this case that we presented a reasonable basis that FDA would conclude that there is a currently accepted medical use with severe restrictions because we went to past actions, which were no different, and we applied that precedent here. And there's nowhere in the agency's brief where you see a refutation of that. They don't discuss the 1982 rule. They don't discuss the FDA's position on what this statutory phrase means. And it can't possibly be the case that DEA has interpretive prowess over FDA, over what that phrase means in light of Gonzales v. Oregon. And that's binding, what Gonzales v. Oregon says. So there's no rule of interpretation in which FDA's view of what this statute means takes a backseat to what the agency means. And since we presented a reasonable basis, according to the agency's own paragraph at the end, the place this should be remanded to is HHS, not the agency. The Johnson paper is more evidence than anyone could ever want to submit. Thank you, Your Honor. Thank you. Good morning, Your Honors, and may it please the Court, Katherine Prady for the United States. A petition to transfer a drug from Schedule 1 to Schedule 2 will be denied unless it makes a showing that the drug has a currently accepted medical use with or without severe restrictions. For decades, DEA has applied a five-part test for making that determination in the absence of FDA approval. The rescheduling petition here did not so much as attempt to address the five elements of the test, let alone attempt to satisfy them. Confronted with the absence of any showing that the elements of the test were satisfied, DEA explained that, therefore, a prerequisite to FDA that the drug has an accepted medical use. Well, you're reading a lot into what's essentially two sentences of explanation for denying the petition, right? The petition, the letter, basically says a prerequisite is FDA determining that this has a currently accepted medical use. I don't even think that is a prerequisite, right? Well, the reason the letter is written this way, is because it was responding to the arguments presented in the petition. Petitioners, for reasons best known to them, framed their rescheduling petition in terms of FDA designations and where a drug is in FDA's clinical testing process. And so, responding to this argument concerning FDA designations well short of FDA approval, DEA said that's not good enough. DEA did invoke the five-part test in its denial letter. There's no engagement with the substance of the petitioner's arguments here. Well, there's no argument in the petition that it corresponds to the test that DEA has applied for decades and that has been repeatedly upheld by the court. Even this letter doesn't say that. Your brief says that, right? But I don't even see how you could read that into the letter. So, I do think the letter does respond to this argument about FDA designation and FDA approvals, because that is how the petition is framed and that is also how their brief is framed. It is all in terms of the FDA investigational drug process. Of course, if the court does determine that it is unable to adequately discern the agency's reasoning on the basis of the denial letter, then it would be appropriate to remand so that the agency could more robustly articulate its position. But, and of course, then the agency would, consistent with the court's opinion, provide more explanation to facilitate this court's review. But I do think that the denial letter does track the basis for the rescheduling put forth in the petition, which is why it focuses on FDA's requirement. DEA has been quite clear that FDA approval is not on its own required for a drug to have a currently accepted medical use. But in the absence of FDA approval, petitioners do have to make a showing according to this five-part test and that has been repeatedly upheld by the courts of appeals and there was just no showing in that respect at all. Does the five-part test originate from the first part of that provision in treatment in the United States? So as DEA explained in its 2016 order, I think the 81 Federal Register citation, the five-part test does apply to a currently accepted medical use with or without severe restrictions. The way that test would operate would change somewhat if the restrictions were identified. So for example, concerns about or questions about the safety studies or the well-controlled studies proving efficacy, those would look different if severe restrictions were constraining the scope of the inquiry. But the five-part test for determining whether there is a currently accepted medical use to one degree or another is applicable to both of these standards. Do you view that as a threshold or a baseline for either one of these? I'm sorry, I'm not sure if I understand what you mean by threshold. Well, what I mean is that both of the provisions, both parts of this provision, say currently accepted medical use in treatment in the United States or currently accepted medical use with severe restrictions. And is it your position that first somebody has to show currently accepted medical use, whatever that may mean, and then if they make that showing, we then move to the next part of this? Not necessarily, Your Honor. It is certainly true that with severe restrictions does inform the scope of that initial inquiry. So it's not a two-step inquiry, if that's what you're asking. Yeah, that is what I'm, okay, thank you. And I do want to make absolutely clear that DEA does recognize that these are separate standards and separate bases. It is just sort of true as a matter of logic that there has to be some currently accepted medical use to one degree or another to satisfy either of these separate bases. Where has DEA said that the five-part test applies to currently accepted medical use with severe restrictions? So in that 2016 denial of the petition to reschedule marijuana at 81 Federal Register, and I don't have the exact page number for me, but I think you can see that. Has it said that anywhere else other than that one? I do not have another citation. But I do think the explanation of currently accepted medical use and the details of the five-part test are very flexible to accommodate both of these standards. And if you look at the factors, excuse me, the elements of the five-part tests themselves, they are very natural understandings of what you might require for currently accepted medical use. And I think DEA is correct that this would apply even in the severe restrictions. The petitioners argue that the safety prongs are superfluous. How do you address that point? In a few ways, Your Honor. First, it is hard to imagine that a substance could have a currently accepted medical use in the absence of any understanding of the substance safety. But second, this argument about superfluity just doesn't correspond with how the statute works. There are clearly overlapping considerations in many aspects of the findings that the statute requires. One example of this can be found in Section 811A1. The requirement that a drug or attorney general must make. And then second, are the findings set forth in the various schedules in 812. And each of those various schedules also include some determination of abuse. So it is just clear in the statute that there is overlap. There are overlaps in the factors listed under 811C. And it is just not true that the consideration of safety in currently accepted medical use would be an unreasonable interpretation of that phrase. What is your view on when DEA has to refer a petition to HHS? So DEA does have a practice of referring petitions to HHS when it believes that based on what is presented in the petition, there is a reasonable grounds for rescheduling. It does apply as it has for decades, this test. And finding no argument or proposals with respect to that test in this petition, deny the petition. And that is not arbitrary to continue to apply the standard that it has been applying. It is possible, of course, that there might be some drugs in later stages of the investigational new drug process that do satisfy the elements of the showing that this is so. And that is something that this petition did not do. Right, although there's no explanation provided for why it didn't. Well, so I do think that the explanation provided in the denial letter tracked exactly the nature of the arguments in the petition, which really was this focus on FDA. But again, there is the option to remand for a more robust explanation from the agency. I will say a word on the proposal for a voluntary remand. It is that is simply the agency's proposal for a more cooperative approach working with petitioners on submitting material and making the case according to DEA's five-part test. The agency does recognize petitioner's interest in a quick turnaround and expects that this sort of process would be more expeditious than some of alternatives they propose, including a remand under Tenery for the agency to articulate more explanation under this petition as it stands. But of course, all of these options are available to the court. If there are no further questions, we ask this court to deny the petition. Thank you. All right. Thank you, Your Honors. Just a few quick points to hit. The first is, you know, one aspect of the briefing that we pointed out is there is no that the agency to this day has never ever distinguished the normal two cases as far as that these are factors to be balanced. There's no response in their brief. There's no response today. It's just an argument that the agency just has no response to why they're defying a DC circuit precedent. They're not even here saying brand X, that they have interpreted it differently. They just don't interpret it at all. So that's a key problem. Don't interpret what at all? So in normal two, the court said that these three factors, accepted medical use, potential for abuse, are all to be balanced. And the agency has said that instead, accepted medical use is a threshold inquiry. There's nothing in their response. There's nothing in their briefing. And yes, over time in the Federal Register, they've said otherwise, but they never explained why. Well, I think your opposing counsel said you would hear you're arguing currently accepted medical use with severe restrictions. I thought what she was saying was that the latter would inform the former here. But it doesn't sound like what you're arguing for. My point is, is that these factors need to all be balanced against each other. And they're treating accepting that at least the stated basis for denying the position was it didn't meet the threshold of accepted medical use. Again, we there's there's just no explanation about the Johnson paper. The agency is asking for a voluntary remand. It's not ever explaining why this paper that we submitted that has dozens of what is it that we are supposed to submit at this point to show that this has safety and efficacy evidence. This paper cites that in space. So the agency keeps standing on the five part test. But but in actuality, we submitted evidence, we didn't format it like the way that the agency wants of like, here's the five part test, because we think the five part test is unlawful. But all of the evidence that needs psilocybin as a reproducible chemistry, there's safety, safety studies in here, there's advocacy that studies in here, there's wide ranging of experts accepted and then evidence is scientifically available. I don't understand what it is the agency wants a remand to do. We already gave them all this information. What I do know what the agency wants to do is it wants this court to that five part test was a product of Chevron deference. If the court goes to the 1992 ACT opinion from the DC circuit, there was no attempts to exhaust the tools of statutory construction. The court just deferred and it didn't even defer to the five part test. It deferred to an eight part test. And on remand, the agency rewrote the test and went back to the DC circuit and there was an erroneous application of law of the case. The test changed but the court never looked at statute to see if the change test work. All the other cases the agency is citing, none of those cases actually examined whether this test has any grounding in the text of the statute whatsoever. But we heard from my friend over here that there's no answer as to this safety superfluousness. There's no answer as to accepted and acceptable. Your honor, I argued a different case that was dismissed on exhaustion grounds. But Judge Watford wrote a concurrence stating that this agency is misinterpreting that statutory phrase. It's the Cicely versus DEA case. And in that case, we made even more arguments as to why this five part test is entirely unlawful. But the reason it exists, your honors, the reason it exists is very simple. DEA wants to control the practice of medicine. That's what's going on here. Because this case isn't about diversion. It's not about drug abuse. Your honors, we went through pans to explain in our briefing, but the only difference between a Schedule I drug and a Schedule II drug that hasn't been approved by the FDA, the delta between those two, not approved by the FDA, but Schedule II, is that doctors such as my client and other doctors can use that treatment in severely restricted expanded access or right to trials scenarios to treat patients. That's what DEA is getting in the way of here. That's what the five part test is getting in the way of. The DEA is front running the practice of medicine, is preventing doctors from using treatments for which there is safety and efficacy evidence. And it's doing that using the five part test, complaining that petitioners didn't format it according to an unlawful five part test, even when we submitted a paper that had all of the evidence. So I would ask the court at minimum to hold the five part test to be unlawful. There's no point in sending this back to the agency so it can apply an unlawful test. My clients, my time is up, but my clients and the doctors and the amici that showed up in this case, because this is about in part terminally ill patients, delaying this matter years based on this unlawful five part test doesn't do justice for anyone. Thank you. Thank you. Thank you, counsel, both for your arguments this morning. They were very helpful. This case is submitted and we are adjourned.
judges: IKUTA, BADE, BRESS